**Ronald E. LEE, Plaintiff,**

v.

**Morris E. RIDGDILL, as Mayor of the City of Clewiston, Florida, et al., Defendants.**

**No. 77–8010–CIV–CF.**

United States District Court, S. D. Florida.

Oct. 31, 1977.

Ellis Rubin, Miami, Fla., for plaintiff.

William C. Owen, Jr., Cone, Owen, Wagner, Nugent, Johnson & McKeown, P.A., Tequesta, Fla., for defendants.

## ORDER

FULTON, District Judge:

This is an action to restrain the enforcement of the dismissal of the plaintiff as Chief of Police for the City of Clewiston, Florida by the City Commissioners of said City, and for damages incidental thereto. Jurisdiction of the Court is based upon general federal question jurisdiction, 28 U.S.C. § 1331, and upon civil rights jurisdiction, 28 U.S.C. § 1343 as implementing 42 U.S.C. § 1983.

The Court heard testimony and arguments of counsel, after which the Court dictated from the bench certain facts which included a finding that the plaintiff had not made a showing that he was likely to prevail on the merits, and had not shown that he would suffer irreparable harm, for which reasons preliminary relief was denied. *See, Canal Authority v. Callaway*, 489 F.2d 567 (5th Cir. 1974).

After making these findings, the parties through their counsel stipulated that the preliminary injunction be consolidated with a hearing on the merits, pursuant to Rule 65(a) F.R.C.P., which left the cause with the Court ripe for final resolution on the merits.

The plaintiff in this cause was the Police Chief of the City of Clewiston for the period of three years prior to his dismissal by the Commission on December 1, 1976. The defendants herein are the City Commissioners of Clewiston in their official capacities only, and no action has been brought against them as individuals.

Some time in early November 1976 it came to the attention of Mayor Ridgdill that the Chief of Police Lee was in possession of certain information concerning an assault and robbery for which one person had been previously convicted and sentenced. The Mayor was further informed that the Police Chief was not processing the information in his possession to the proper authorities. It appears that the Mayor had concluded that certain wrongdoing was involved and, upon advice from the City Attorney, undertook an investigation of the allegation.

The Mayor called Chief Lee and set a meeting with him concerning the matter. It appears that one other officer, Lieutenant Shelly, was told to come to the same meeting. Both Chief Lee and Lieutenant Shelly met with the Mayor on or about November 15, 1976. Mayor Ridgdill confronted the two policemen concerning the allegation. It is unclear whether the Mayor learned at this time, or whether he had known prior thereto that the same charge had been brought to the attention of the State's Attorney. Apparently, the State's Attorney determined at that time that the evidence was insufficient. It appears that subsequent to that meeting the Chief of Police had considered the matter to be closed.

When this matter resurfaced the Mayor determined that he wanted to get the matter "cleared up" and thus directed that "you boys are going to have to take a polygraph test in Collier County." During this conference neither Chief Lee nor Lieutenant Shelly informed the Mayor whether they would comply with the Mayor's directive.

After this meeting, being concerned about their rights, both Lee and Shelly sought the advice of counsel as to whether they would be required to take these polygraph exams, in light of their Fifth Amendment rights against self incrimination. After consultation with his lawyer, Chief Lee determined that he would not take the examination in Collier County. Instead, he submitted to an examination in Miami by a private polygraph examiner.

Upon his return with the polygraph results from the Miami examiner, Lee went to both the Mayor and the City Attorney who refused to look at them. The Mayor reiterated the directive that Lee was to submit to a polygraph examination in Collier County. Lee then refused, explaining that he was acquainted with the examiners there, whose competence he doubted, and that his refusal was also based upon the advice of counsel.

On November 24, 1976, the Mayor, pursuant to his powers in Article IV, Section 2 of the City Charter, suspended Lee from his duties as Chief of Police. On November 29, 1976 the Mayor circulated a letter to the members of the City Commission informing them of his action of suspending Lee and closed with a recommendation that Lee be dismissed.

On November 28, or 29th the City Attorney called Chief Lee and informed him that on December 1, 1976 at 8:00 p. m. a special meeting of the City Commission had been called for the purpose of considering the Mayor's action. During this same period, the last week of November, the Mayor solicited support for the dismissal of the Chief from other members of the Commission.

Chief Lee was present at the special meeting of the Commission of December 1, 1976. At that meeting the Mayor read into the record his letter to the Commissioners concerning his suspension of the Chief. A motion was made by Commissioner Beards-

ley and seconded by Commissioner Smith that Chief Lee be discharged.

At the public meeting, the Mayor stated that the reason for his suspending the Chief was misconduct on the Chief's part which consisted of consulting an attorney and refusing to take a polygraph test. The floor was then opened, permitting a full public discussion which included the presentation of a petition on behalf of Chief Lee. At the conclusion of this discussion, a vote was taken on the motion to dismiss. The result of the vote was for the dismissal of the Chief by three votes to two.

The Court finds and concludes that the City Commission had the power to dismiss the Chief with or without cause pursuant to the authority granted under Article IV, Section 4 of the City Charter; and that the Commission meeting of December 1, 1976 as an official special meeting of the City Commission was proper under the Charter.

## PROCEDURAL DUE PROCESS

The plaintiff contends, that while it may be that he had no property interest in his position, he did have a liberty interest in his good name and reputation which under the rule of *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), would require a due process hearing.

Defendants contend that even if the plaintiff had a liberty interest which required due process, the special meeting of the Commission served to meet the standards required.

■ Assuming that the plaintiff did have some liberty interest the question then is what type of due process was required. To determine this the Court must consider the degree of the interest involved. Here plaintiff claims that his good name and reputation were at stake. It appears from the testimony of all of the witnesses that the Mayor and the Commission had high praise for the Chief and the quality of law enforcement in general within the City. Such comments were made at the public hearing of December 1, 1976.

In the instant case the Court finds that there was a minimal liberty interest in-volved and therefore minimal due process would be required.

■ Minimal due process requires notice and an opportunity to explain. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). The plaintiff was given notice three days prior to the date of the hearing that his suspension was going to be considered by the Commission at a special meeting. Although the exact words spoken to the plaintiff did not say a meeting to consider your dismissal, it is unlikely that an employee who serves at the will of the Commission would not be on notice that his termination was a possibility. Further, the plaintiff appeared at the hearing and had an opportunity to speak. On these facts it must be concluded that plaintiff had sufficient notice.

The second issue is whether the hearing was sufficient to meet the requirements. The Court concludes that it was. A special meeting of the Commission was called, notice to the plaintiff was given, and the press was obviously notified under Florida's Sunshine Laws. The meeting was open to the public, in fact many attended. The Mayor conducted the meeting, read his letter into the record, discussion was held among the Commission, and audience participation was afforded. As part of the latter a petition was presented in support of Chief Lee

Although it is unclear whether Chief Lee addressed the Commission, whether he did is not dispositive. The Chief had the opportunity to speak, whether he accepted it or not is immaterial. Therefore, the Court finds that a liberty interest was present and the due process procedure followed was sufficient to meet the minimal interest involved.

## OTHER CONSTITUTIONAL CLAIMS

Plaintiff next contends that his dismissal was wrongful because it was in violation of other Constitutionally protected rights. Plaintiff asserts two violations. First, plaintiff contends that he was dismissed in violation of his Fifth and Fourteenth Amendment rights against self incrimination. Secondly, the plaintiff contends he

was dismissed in violation of his right to consult with counsel.

## SELF INCRIMINATION

██ With regard to plaintiff's right to be free from self incrimination the Court finds that if such a right existed here plaintiff's submission to the independent polygraph examination in Miami, and the subsequent presentment of the results thereof to members of the Commission was a waiver of the right against self-incrimination. Therefore the Court declines to consider whether the right exists herein.

## RIGHT TO CONSULT COUNSEL

As to the plaintiff's final claim concerning his constitutionally prohibited discharge because he consulted an attorney the Court is quite concerned. The Mayor stated that Chief Lee's dismissal was for misconduct which included consulting an attorney. Before a person may violate a directive, either published or understood, such a directive must exist. Therefore, it may be assumed that in the City of Clewiston there was at least an implied or unwritten rule that employees were prohibited from seeking counsel, not withstanding that the rights involved their employment with the City.

Proceeding from this conclusion the question then is whether a public employment rule or directive precluding consultation with an attorney concerning one's constitutional rights with regard to employment is of itself violative of the constitution. If such is a violation, then is a dismissal for breach of said rule violative of the due process clause. Defendants contend the right to counsel is limited to those areas involving criminal prosecutions. This reasoning flows from a narrow analysis of the Sixth Amendment. However, the Fourteenth Amendment due process clause has been held to be the source of a right to consult an attorney. In *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court found that persons have the right to counsel at the revocation of welfare benefits hearing. The Court stated,

" 'The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel.' *Powell v. Alabama*, 287 U.S. 45, 68–69, 53 S.Ct. 55, 77 L.Ed. 158 (1932). We do not say that counsel must be provided at the pretermination hearing, but only that the recipient must be allowed to retain an attorney if he so desires." 397 U.S. 254, 270, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287.

This same principle of due process was stated in *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) wherein the Court stated,

"We have formalized the protections in the requirements of confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment . . . This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, . . . but also in all types of cases where administrative . . . actions were under scrutiny."

██ It thus appears that the Supreme Court has recognized a right to consult counsel in administrative matters. In *Goldberg* the Court clearly announced the principle that when a constitutionally protected deprivation occurs a right to consult counsel arises. Applying that rule to the instant case, this Court finds that the deprivation of the right to be free from self incrimination resulted in the concomitant right to consult an attorney. The interference with this right by state officials is thus violative of the due process clause of the Fourteenth Amendment. Therefore, this Court finds that the dismissal of Chief Lee by the defendants because he consulted an attorney with regard to protecting his Fifth and Fourteenth Amendment rights was violative of Chief Lee's Fourteenth Amendment due process rights and thus improper.

Upon consideration of the foregoing, it is thereupon

ORDERED and ADJUDGED as follows:

(1) That plaintiff's dismissal was improper because of a denial of due process under the Fourteenth Amendment;

(2) That the defendants shall be and they are hereby enjoined from dismissing the

plaintiff as Chief of Police for the reason that he consulted an attorney.

(3) That plaintiff shall be reinstated as Chief of Police of the City of Clewiston, Florida;

(4) That plaintiff is to receive all back pay, benefits and rights from the date of dismissal to this date.